IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEROME WALKER,

                                                    OPINION AND ORDER

                Plaintiff,

                                                    17-cv-234-bbc

     v.

TANYA BONSON and
JOLINDA WATERMAN,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Pro se plaintiff Jerome Walker, who is incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, is proceeding on claims that prison medical staff violated his rights under the Eighth Amendment by failing to provide him adequate medical care for his lower back pain. Before the court are the motions for summary judgment filed by plaintiff, dkt. #28, defendant Bonson, dkt. #50, and defendant Waterman, dkt. #41.

       For the reasons stated below, I am granting the motion for summary judgment filed by defendant Jolinda Waterman and denying the motions for summary judgment filed by plaintiff and defendant Tanya Bonson. Defendant Waterman will be dismissed. This case will proceed to trial on only one claim: that defendant Bonson took away the TENS unit plaintiff needed for his lower back pain and failed to return it for 69 days without consulting or examining him, even though she knew he was in pain.

1

From the parties' proposed findings of fact, I find that the following facts are undisputed unless otherwise noted.

UNDISPUTED FACTS

A. Parties

Plaintiff Jerome Walker has been an inmate at the Wisconsin Secure Program Facility in Boscobel, Wisconsin since September 20, 2016. At all times relevant to this lawsuit, defendants were both employed at the institution.

Defendant Tanya Bonson is an advanced nurse "prescriber" under contract with Maxim Physician Resources, Inc. and was assigned to the Wisconsin Secure Program Facility to serve as the primary care provider from May 31, 2016 to March 31, 2017. Bonson did not see plaintiff in person during her assignment at the institution.

Defendant Jolinda Waterman is a nurse and the health services manager at the prison. As the health services manager, she is under the general supervision of the warden and is responsible for providing administrative support and direction to the unit. Waterman does not provide direct patient care, but a number of nurses and support staff in the health services unit work with patients. She does not have the authority to require a health care provider to pursue a certain course of treatment. If an inmate receives a recommendation for care from an outside medical provider, the recommendation is not automatically implemented and must be reviewed by health services staff with the institution's security needs in mind.

B. <u>Plaintiff's Medical Treatment</u>

Plaintiff has chronic, axial low back pain for which surgical treatment is not an option. On July 31, 2015, an outside medical specialist recommended that plaintiff use a transcutaneous electrical nerve stimulation (TENS) unit for his lower back pain "for lifetime," and the health services unit agreed to provide one to plaintiff. A TENS unit is a non-invasive, drug-free, small electronic device comprising a base unit and four electrode pads connected to the base unit by thin wires. When activated, the TENS unit sends stimulating pulses across the surface of the skin, producing a tingling or massaging sensation to reduce the sensation of pain. Although the TENS unit is an effective means of pain management for some users, it has the potential for misuse in the prison setting and can pose significant threats to security. For example, the base unit can be converted for use as a tattoo machine, or as a heating element in which the bare wires are utilized to conduct electrical currents for heating foods and beverages. (The parties dispute whether the TENS unit at the prison is always kept on the medication cart and available only during medication pass times. Plaintiff says that he was allowed to keep his TENS unit in his cell at all times.)

If the pads on a TENS unit prescribed for an inmate become non-functioning, the inmate can request replacement pads by submitting a medication refill form to the health services unit. A nurse reviews the request and can send new pads to the inmate on the medication cart.

3

On September 29, 2016, defendant Bonson entered an order referring and scheduling plaintiff for a neurosurgery consult for low back pain and moderate stenosis at an outside hospital. She noted that plaintiff had recently transferred into the prison and was going to miss an appointment for an epidural steroid injection at the pain clinic at his previous institution. Bonson also noted that plaintiff had received other injections, pain medication and physical therapy in the past.

### C. Discontinuation of Plaintiff's TENS Unit

At 7:00 a.m. on October 28, 2016, nursing staff received a form from plaintiff requesting new electrodes for his TENS unit. Plaintiff included his used electrodes with the request. Nurse Beth Edge made a note in plaintiff's medical record that the wires had been removed from the pads and the rubber coating on the wires had been pulled off to expose the bare wire. Edge determined that the wires had been "altered." (Plaintiff disputes this conclusion and says that the wires became dislodged when he was hurrying to remove the unit from his bed to give it to a corrections officer so he could exchange it for a new one.)

Security staff asked Edge whether the unit was medically necessary for plaintiff and requested that the order for it be discontinued if possible. Later on October 28, 2016, Bonson entered an order to discontinue plaintiff's TENS unit because of the misuse of pads, noting the unit had been taken apart and wires were exposed. Bonson did not examine plaintiff at that time or take any pictures of the damaged unit but she did review his medical chart. She believed that the unit was not "medically necessary" for plaintiff in light of his

past history of injections and physical therapy, his continuing use of pain medication and his pending neurosurgery consultation for evaluation and treatment.

When plaintiff lost his TENS unit, he was already taking Gabapentin, a neuropathic pain medication, three times a day as well as Naproxen and having a muscle rub. Plaintiff also had a prescription for Nortriptyline, a pain medication he took daily. Plaintiff continued taking these medications during the period that he was without the TENS unit. (As discussed below, the parties dispute the facts relating to plaintiff's access to Nortriptyline during this period.)

### D. Subsequent Medical Treatment and Requests for Pain Medication

Over the next few months, plaintiff submitted several of the health service request forms that inmates submit to seek medical services. Health service nursing staff retrieve and review the forms, triage the requests, provide responses if they are able to and send the remaining requests to the appropriate person or department for a response or action. Defendant Waterman responds to inmate correspondence that cannot be addressed by nursing staff or others responsible for providing care. Although plaintiff says that he addressed his health service requests to Waterman, she did not sign or respond to any of them. Either Nurse Edge or Nurse Sonya Anderson reviewed and responded to plaintiff's requests. According to Waterman, it was not necessary for her to receive, review or respond to any of the requests that plaintiff submitted between October and December 2016.

5

On October 29, 2016, plaintiff completed a health service request form asking for his TENS unit. Dkt. #45-1, at 16. Nurse Edge responded on October 30, 2016 that the TENS unit had been discontinued because of misuse. Id. Plaintiff submitted another health service request on October 30, 2016, stating that he had not altered the device, that he needed it for his back pain and that he wanted an appointment with medical staff and the pain clinic. Id. at 17. Nurse Edge responded on October 31, 2016 that she would inform the "provider" of his requests. Id.

Although plaintiff had an appointment scheduled with the outside pain clinic on November 4, 2016, his medical chart includes a note that he was not taken to it because health services was unaware of the appointment. Dkt. #45-1, at 3. On November 6, 2016, plaintiff submitted a health service request asking for an appointment with a medical provider, as well as pain pills and the return of his device because he was in pain. Id. at 18. On November 7, 2016, Nurse Edge wrote that his requests were forwarded to "the provider" for review. Id.

Plaintiff made similar requests on November 10 and 30 and December 18, 2016, emphasizing that he was in pain, the medication that he was on was not working and that he had not seen a provider. Dkt. #45-1, at 19. On November 11, 2016, Edge responded that plaintiff had been scheduled to see a provider. On December 1, 2016, Nurse Anderson responded that plaintiff had a neurosurgical epidural appointment that month for his pain and that she would forward his requests to the provider for review. Id. at 20. In the same response, defendant Bonson wrote that security concerns prevented the return of plaintiff's

6

TENS unit but that alternative treatment was available and plaintiff's medications could be refilled. At an appointment on December 1, 2016, Nurse Anderson confirmed that plaintiff would be scheduled for an epidural injection and consultation with neurosurgery that month.

On December 4, 2016, plaintiff wrote to health services to complain that he had not had his pain medication (Nortriptyline) for 30 days because it had not come from the pharmacy. Edge responded the next day that the medicine had been sent to the medication cart.

Plaintiff's medication record from November 2016 shows that he received Nortriptyline on November 1-9, 11-14, 16 and 20, 2016 but not on the other 15 days in that month. The record notes specifically that the medication was "unavailable" on November 22 and 26, 2016, but there is nothing in the record about missed doses on the other days. Dkt. #45-1, at 39. According to Waterman, the central pharmacy was closed for the Thanksgiving holiday at the end of November 2016. Plaintiff's medication record from December 2016 states that plaintiff's Nortriptyline was discontinued on December 4, 2016, but that plaintiff started receiving Nortriptyline regularly again on December 6, 2016. Id. at 40.

E.  Return of TENS Unit

On December 22, 2016, plaintiff saw Dr. Doug Hughes at Gundersen Lutheran for a neurosurgery consult to which he had been referred by defendant Bonson. Dr. Hughes found that plaintiff had low back pain with no radicular symptoms and recommended

7

conservative therapy, physical therapy and a referral to physical medicine and rehabilitation. Dr. Hughes noted that plaintiff said he got relief from a TENS unit and putting ice on his back, so he recommended that plaintiff have TENS unit treatment. Nurse Edge saw plaintiff when he returned from the appointment and noted in plaintiff's record that she told plaintiff that Bonson, Waterman and security would have to review the TENS unit request. Also on that day, Bonson entered orders for treatment that Dr. Hughes had recommended: (1) conservative therapy, physical therapy evaluation and treatment of back pain; (2) a referral to physical medicine and rehabilitation; and (3) TENS unit if security approved it. Dkt. #45-1, at p 9. According to Bonson, both security and Waterman had to approve the TENS unit for plaintiff.

On December 27, 2016, Inmate Complaint Examiner Ellen Ray sent defendant Waterman an email regarding an offender complaint filed by plaintiff about his TENS unit. Waterman reviewed plaintiff's medical records and responded to Ray in an email dated December 28, 2016, explaining that

> Mr. Walker's TENS unit was discontinued 10/28/16 due to misuse of pads (patient had taken apart the pads exposing the wires which can result in electrical conduction and discomfort. RN Edge did not take the TENS unit away except to report it to the provider who discontinued it. HSM Waterman spoke to Security Director Waterman [sic Hartman] today who approved patient getting the TENs unit back with proper security checks. Patient's chart will be forwarded to NP Bonson to renew it.

Dkt. #45-2, at 3.

On December 29, 2016, Bonson entered an order for plaintiff to have the TENS unit treatment three times daily for 20 minutes for six months and noted that the order had been

cleared by security and Waterman. Id. at 10. Also on that day, plaintiff received a memorandum from defendant Waterman, stating that "[t]he TENS unit is on the medication cart of each housing unit and is to be documented as a treatment on the DOC-3026 Medication/Treatment record. It is to be used at medication pass times only." Dkt. #45-2, at 5.

On January 6, 2017, defendant Bonson notified plaintiff that his personal TENS unit was being returned, stating that "[y]ou have received your TENS unit order back. Hopefully that is helping your back pain. You will be seen by Physical Therapy here and you have also been referred to physical medicine and rehabilitation through [G]undersen [L]utheran for further work up of your pain." Dkt. #45-1, at 46.

## OPINION

Plaintiff has been allowed to proceed on the following Eighth Amendment medical care claims against defendants Bonson and Waterman: (1) defendants Bonson and Waterman took the TENS unit plaintiff needed for his lower back pain and failed to return it for 69 days without consulting or examining him, even though they knew he was in pain; (2) defendant Waterman failed to take reasonable measures to respond to plaintiff's complaints that he lacked effective pain medication, even though she knew his current medication was not alleviating his back pain; and (3) defendant Waterman failed to take reasonable measures to provide pain medication to plaintiff for 30 days when he was unable to get his regular prescription medication from the pharmacy.

9

To prevail on a claim under the Eighth Amendment, a prisoner plaintiff must show that the defendant was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. Id. A medical need may be serious if it "significantly affects an individual's daily activities," Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by failing to take reasonable measures." Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Delay in treatment may constitute deliberate indifference if the delay unnecessarily prolongs the prisoner's pain. Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). However, the Court of Appeals for the Seventh Circuit has recognized that delays are "common in the prison setting with limited resources," and stated that "whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." Petties v. Carter, 836 F.3d 722, 730 (7th Cir. 2016).

A. TENS Unit

Plaintiff alleges that defendant Bonson took his TENS unit without consulting or examining him and refused to return it for 69 days, even though she knew plaintiff was in pain. Although plaintiff does not allege that defendant Waterman was involved in the initial decision to remove his TENS unit, he alleges that she knew about Bonson's actions and had the authority to do something about it but failed to do so. I will address his allegations against each defendant separately.

1. Defendant Bonson

To show that defendant Bonson acted with deliberate indifference in taking plaintiff's TENS unit and not returning it for more than two months, plaintiff must show that her decisions were "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that [Bonson] actually did not base the decision on such a judgment." McGee v. Adams, 721 F.3d 474, 481 (7th Cir. 2013) (internal citations omitted). See also Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012) (prison health care professional "is free to make [her] own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the [provider's] professional judgment and does not go against accepted professional standards."). Although Bonson contends that she used medical judgment when making her decision to remove plaintiff's TENS unit, she has presented little evidence or explanation to support her contention. Instead, she relies primarily on a vague and conclusory statement that she "weighed the medical benefits" of the TENS unit

11

treatment to plaintiff with the potential security risks of an altered unit, and on the basis of her "medical judgment," determined that the TENS unit treatment was not medically necessary for plaintiff in light of his past history of injections and physical therapy, his continuing use of pain medication and his pending neurosurgery consultation for evaluation and treatment.

As plaintiff points out, Bonson made her decision without examining him. Although Bonson says that she reviewed plaintiff's medical chart for his past and current treatment, the record contains no evidence to explain why Bonson believed that plaintiff's past treatment with injections and physical therapy would make his ongoing TENS unit treatment unnecessary. For example, she does not discuss how long or how well the past injections relieved plaintiff's pain or even how much pain plaintiff was experiencing. Although it is undisputed that plaintiff was taking pain medications throughout the relevant period (except perhaps during 20 days in November 2016), plaintiff has presented evidence that his medications were not effective in controlling his pain without the TENS unit. The undisputed evidence shows that plaintiff submitted several health services requests about the amount of pain he was in and the fact that his pain medication was not helping. These requests were forwarded to plaintiff's "provider," whom the parties say was Bonson, and Bonson responded in writing to one of the requests. (Although plaintiff was not allowed to proceed on a separate claim against Bonson for not providing effective pain medication, her knowledge of his complaints is relevant to her medical decision regarding the TENS unit.)

Defendant Bonson says that she scheduled plaintiff for an epidural injection and evaluation and that plaintiff saw the specialist in late December 2016. However, these facts do not explain why Bonson decided that plaintiff did not need the TENS unit in addition to the injections, physical therapy and pain medications, particularly in light of the fact that a previous specialist had deemed all of these measures necessary—including the TENS unit—to treat plaintiff's pain. Although Bonson is correct in saying that it is not deliberate indifference for her to reach a different medical conclusion from another provider, she cannot prevail on summary judgment by merely saying that she exercised her "medical judgment" after reviewing plaintiff's medical records.

In sum, without further explanation from Bonson about her decision to remove the TENS unit, a reasonable jury could infer that Bonson should have known that plaintiff's alternative treatments were not working on their own and conclude that Bonson cancelled the TENS unit when asked to do so by security instead of making an independent medical judgment about plaintiff's need for the device. Therefore, I am denying Bonson's motion for summary judgment with respect to plaintiff's Eighth Amendment claim against her. I also am denying plaintiff's motion for summary judgment with respect to this claim because plaintiff has failed to present sufficient evidence to show that there is no question of fact with respect to whether defendant Bonson acted with deliberate indifference.

2. Defendant Waterman

Defendant Waterman says that she had no role in the decision to remove plaintiff's TENS unit and did not have the authority to return it to him. Although plaintiff correctly points out that Waterman (along with security personnel) had to sign off on Bonson's decision to return the device, he has not presented any evidence that she withheld her approval after Bonson made the medical determination that plaintiff's TENS unit should be returned. Even though Waterman was the health services unit manager, the undisputed facts show that she did not have any role in treating or evaluating plaintiff's medical condition and had no authority to change or dictate Bonson's medical decisions.

As I have explained to plaintiff in previous orders, under § 1983, public employees cannot be held personally liable unless they can be shown to be personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). To be liable, an individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003). An individual is not liable under § 1983 merely because he agrees with or defends a decision made by someone else. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("[O]nly persons who cause or participate in the violation, are responsible"); Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (§ 1983 defendant must have participated personally in constitutional deprivation); Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002) (noting there is no respondeat superior (supervisor) liability under § 1983). Because Waterman had no personal involvement in the medical decision to remove or return plaintiff's TENS unit and deferred to Bonson's medical opinion about whether the device

was medically necessary for plaintiff under the circumstances, she is entitled to summary judgment on this claim.

### B. Pain Medication

Plaintiff's claims against defendant Waterman with respect to pain medication are based on his allegations that he told Waterman in a number of health service requests that (1) his pain medication was ineffective; and (2) he was without any pain medication for 30 days in November 2016 because he could not get it from the prison pharmacy. Plaintiff says that Waterman never responded to any of his health services requests and that other nurses stated only that they were forwarding his requests to "the provider."

Although plaintiff blames defendant Waterman for what he believes to be inadequate responses to his requests, he has failed to present any evidence that Waterman knew about the requests or had the authority to intervene on his behalf. It is undisputed that other nurses, not Waterman, retrieved, reviewed and responded to the health service request forms plaintiff submitted and that Waterman's name does not appear on any of plaintiff's health service request forms or the responses to them. Further, as discussed above, although Waterman was the health services unit manager, the undisputed facts show that she did not have any role in treating or evaluating plaintiff's medical condition and had no authority to change or dictate another provider's decisions. Without any evidence that she had such responsibility, I cannot conclude that Waterman had any personal involvement in the

alleged failure to address plaintiff's complaints with respect to pain medication. Accordingly, defendant Waterman is entitled to summary judgment on these claims.

ORDER

IT IS ORDERED that the motions for summary judgment filed by defendant Tanya Bonson, dkt #50, and plaintiff Jerome Walker, dkt. #28, are DENIED. Defendant Jolinda Waterman's motion for summary judgment, dkt. #41, is GRANTED and Waterman is DISMISSED as a defendant in this case.

Entered this 31st day of May, 2018.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge